Court of Appeals for the Ninth Circuit. Hear ye, hear ye. All persons having business with the Honorable Judges of the United States Court of Appeals of the Ninth Circuit will now draw near. Give your attention and you will be heard. God save these United States and this Honorable Court. I guess I look over there this morning. Good morning this week with Judge Bybee, my colleague on the Ninth Circuit from Las Vegas. My name is Morgan Christen. I'm one of the circuit court judges and I have my chambers in Anchorage and we are welcoming Judge Bea from afar who's participating today from San Francisco. He's our third Ninth Circuit judge on the panel. Counsel, can you hear us okay this morning? Yes, Your Honor. Okay, great. I'm going to start with just a little housekeeping, Madam Judge. And before I forget, case number 20-71387 Chen v. Garland is submitted on the briefs. We will not hear argument in that case. The same is true of 20-361184 v. Kijikazi. 21-35129 Harder v. United States Postal Service is also submitted. And for the record, there are three cases that were originally on the calendar for Friday, the 11th of February that had been submitted on the briefs. Alpha Venture, case number 21-3524, excuse me, 35724. Robial v. Garland, 21-70438. And Wilkinson v. Pierce County, 21-35357. So with that, I'm ready to move to the first case on our oral argument calendar. We can see both lawyers. Can you both hear us? Could you give me a thumbs up or something to tell me that you can both? Okay, great. We're ready to proceed. This is 19-73138 Pablo Pablo v. Garland. Counsel, we're ready for your argument. Good morning, and may it please the Court. Catherine Meeks for Petitioner Juana Pablo Pablo. The government does not dispute that the immigration judge made two pure errors of law in denying Ms. Pablo's asylum application, but it asserts that these errors are simply unreviewable. For two reasons, this Court should reject the government's position that 1252A2A bars direct appellate review here. First, the statutory text, historical practice, and the strong presumption in favor of judicial review all point to the conclusion that this Court has jurisdiction to review substantive legal errors made in credible fear proceedings. Judicial review of legal but not factual questions is a longstanding feature of our immigration law, dating back more than 100 years, and the language Congress adopted in 1252 tracks that historical distinction. Second, the government's Under the government's view, even manifestly arbitrary and unreasonable interpretations of the statute, such as a ruling that all Christians or all Asians are barred from seeking asylum, would be insulated from judicial review. These hypotheticals are no more extreme than what happened here. The IJ denied the asylum application under the third country transit bar, a regulation that multiple federal courts, including this one, have since declared arbitrary and capricious. Neither section 1252, nor this Court's precedents, foreclose judicial review under these circumstances. I'll start with the statutory text. Counsel, how far does your theory about our ability to review legal error in these kinds of proceedings extend? So it's one thing if an IJ says the statute says X, and it's very clear that the statute doesn't say X. It's another thing if the judge says, well, by a preponderance of the evidence, I find that the petitioner has done Y and that makes them ineligible for asylum or for other proceedings. Now, that can be characterized as a mixed question of law or fact. It certainly is an application of law to fact. But the question as to what constitutes preponderance of the evidence is also a question of law. And if so, it just seems that we've opened up everything and that Congress's attempt to insulate expedited hearings is of no force. So can you tell me how far does your theory extend? Sure. Judge Bybee, the government made a very similar argument in the Guerrero-Las Barrias case where it was interpreting A to D. And the government argued that if that section were interpreted to reach mixed questions, the floodgates would be opened and Congress's case would be undermined. The Supreme Court said in that case that appeals raising factual questions only are a very significant category in the removal context and that the statute interpreted in that fashion still reaches a significant number of cases. In terms of how far our theory goes, that's a tricky question of statutory interpretation that the court doesn't need to resolve in this case because it only presents pure errors of law. However, we would submit that section A to A should be interpreted consistently with A to B and A to C, both of which allow review of mixed questions. But again, it's not a question the court needs to reach in this case. Because the IJ here made other findings besides the third country transit problem. And your claim is that the IJ didn't take account of the fact that of the gender of your client. So very, very broad. I mean, if your point is correct, basically all women in Guatemala would have a right to come to the United States or at least have a credible fear. And that strikes me as a very, very broad proposition. Again, the one that just drives an enormous hole through a fairly carefully crafted statute. Judge Bybee, this court said in Perdomo v. Holder that the fact that a category of individuals is quite large does not preclude a finding that these individuals are a particular social group. That's right, counsel. And we've done a lot more work more recently in Diaz-Renozo on that point, which significantly narrows that issue. But there's another problem, just following up on Judge Bybee's point, which is that there was also a finding here that there hadn't been a showing of persecution or torture established, and she hadn't shown persecution as the facts of this case. It seems to me to be very well supported. She's relating that neighbors told her that someone was threatening that she didn't have personal contact with that person. You know the facts. I don't want to take your time. But what about that? How would we have jurisdiction to review that in an expedited procedure? Judge Kristen, I would direct the court to page 26 of the administrative record where the asylum officer specifies why he denied the claim. And one of the options he could have chosen was that the facts, as alleged by Ms. Pablo, don't add up to persecution. The asylum officer did not check that box. The only one that's checked on page 26 is that she had failed to show any nexus to a protected ground. Well, wait, wait, wait. So what am I looking at? I'm looking at ER 31, and the box is checked, no fear of persecution or torture established. What about that? Am I looking on the wrong page? So on page 31, there's a checkbox for no nexus to a protected ground. But if Your Honor turns to page 26, it's a page where the asylum officer describes the particular basis for his rejection of the asylum application. The only box that he checks is that there's no reasonable possibility that she could connect her alleged fear of persecution to a ground protected under the statute. I'm still not following you. On ER 31, the no nexus box is checked and then it says or, and then the 12.12 box is checked, no fear of persecution or torture established. Sure. Well, at page 49 of the administrative record, the asylum officer found that the facts as stated by Ms. Pablo did not show past persecution, but under this court's precedents such as Sharma versus Garland, she still has a possibility of showing a fear of future persecution. So we think that the record establishes that even if the asylum officer thought there was no past persecution, that she still could establish a future persecution. And again, the only ground on which the asylum officer denied that claim, which is on page 49 of the administrative record, is that she had failed to tie the threats to a protected ground. Why do you think, here's what I was really trying to get back to. I'm not sure I follow that or reach the same conclusion as you do from this page of the record. But again, not to take all of your time. My real question is, I think there's another reason here. My read is there's another reason for denying the application. So can you tell me why would we have a jurisdiction to review this in an expedited proceeding? Sure. Well, we think the court has jurisdiction to review it because the particular language that Congress selected in 1252 bars this court from reviewing the agency's determination in a credible fear hearing. And that determination is the application of the law to the particular facts. It's the agency's fact finding. So we're not asking this court to make its own independent determination whether she has established a credible fear. We're simply asking for a remand so that the agency can make that determination applying the law correctly. And that law says that a person's sex or sex in combination with another characteristic, such as her membership in she's she's a mom from an indigenous group, that that is a possible basis for asylum. Now, she'll still have to establish on the facts that there is persecution in Guatemala based on those characteristics. But the asylum officer and the immigration judge need to apply the law that this is a possible basis. What kind of what kind of cases would we be barred from from rehearing from reviewing? And sure, any type of petition that challenged the agency's fact finding. So, for example, like in the same case, an allegation that the immigration judge made an incorrect credibility determination or credibility determination can be can be characterized as a matter of law. I mean, everything can be can be at some point. We we sometimes overrule IJs on their credibility determinations, find that it's not not significant or not legally significant. So at that point, I mean, the game is on. It feels like there isn't any stopping point. Sure. Well, in Ming Dai versus Garland or Ming Dai versus Garland, the Supreme Court characterized credibility determinations as a question of fact. And most of what the agency will be doing during these proceedings is deciding questions of fact. So I would direct the court to 1225 B1B, which describes what has to be included in the record of the agency's determination. And this is the facts as stated by the alien, the facts relied on by the asylum officer and analysis of why in light of those facts, the alien has not shown a credible fear of persecution. So I think what the language of this statute, 1225 B1B, shows is the nature of IJs inquiry in most cases is really weighing the facts of the case, assessing credibility and deciding whether those add up to a fear of persecution. Council, you've exhausted all of your time. So I'm going to stop you there unless either of my colleagues have another question. When we come back for planning purposes, I'll put another minute on the clock for you, but you're over your time. Thank you. You bet. Can we hear from opposing counsel, please? You're muted. Thanks, Your Honor. May it please the court, I'm Lindsay Marshall on behalf of the Attorney General. Counsel, counsel, counsel, forgive me for interrupting. We're having a little bit of, we can hear you fine. It's a little bit muddy is my best way to describe it. So if you speak a little slower than normal, we'll have an easier time to understanding you. Let me know if this speed is a little bit better. The issue before the court today is whether it has jurisdiction over legal questions stemming from a negative credible fear determination. But this is a question that the court has already answered each time holding that the statute precludes jurisdiction. Ms. Pablos claim provides no reason for the court to come to a different answer this time. Because the statute is not her claim that legal errors can be reviewed conflicts with both the plain language of the statute and this court's precedent. This court has explained in Singh and Garia that the statute was intended to deprive the courts of appeals of jurisdiction over expedited removal orders. Most apropos here, Singh explained that this applies to exactly the same type of question that Ms. Pablo is asking, a legal question. In Singh, the petitioners, like Ms. Pablo, took pains to make clear that they were not asking for review of the underlying factual determination. They were asking a purely legal question. In that case, whether the immigration judge had committed legal error by holding that he had no authority to reopen a negative credible fear case. And the court held that 1252A2A squarely barred review of that claim. It did this by explicitly forbidding review of individual determinations and any cause or claim that arises from or relates to the implementation or operation of an expedited order of removal. And the statute also goes further. It forbids review of the application of 1225B1 to individual aliens, including the credible fear determination. More recently, in Gomez-Cantillano, the court again held it could not review a legal claim of structural errors in a negative credible fear determination. Even when that structural error was the application of the transit bar, which is the same claim that Ms. Pablo makes here. There is nothing to distinguish Ms. Pablo's claim of legal error from these decisions. Forgive me, could I interrupt and ask you a question about the transit bar? Because we have a couple cases on the calendar this week. I think in one, the government has taken a different position on the transit bar. And maybe that is just by the fact that there was an interim rule and then a final rule. And in this case, was it the interim rule that was applied or relied upon? I would have to look more closely at the dates. I believe, Your Honor, I don't know. I would have to look into it. And may I provide a 28-J on that? Sure. I'll just tell you because I'm not trying to be mysterious. I asked my clerk to look. I'm interim rule at issue here. That's been invalidated. I think the government has taken the position they can't rely on that. And I'll just tell you that's where I'm, that's the status of my notes coming in here. So if you think I'm wrong about that, let me know. I will certainly look into it further. But as in this case, as far as I'm concerned, I'm not certain that it's much of a problem here as applied to Ms. Pablo. Looking at what immigration judge did, the immigration judge said that she showed no significant possibility of persecution, which actually is the asylum standard. So even though the credible, in the credible fear interview, the officer said the transit bar would bar her from asylum. It appears the immigration judge applied the asylum standard and looked at it as an asylum case anyway. So for both of you, for the benefit of both of you, the way I'm thinking about this is that the third country transit bar is sort of irrelevant. If it had never happened. Right. And I'm assuming for purposes of this appeal that it hasn't because it's been, I think it's the interim rule. And I think that's been vacated and we've got a different problem that I, we've been trying to probe. Isn't it the case that we would lack jurisdiction in an expedited proceeding to review this claim? Yes. This is the problem here is that the jurisdictional, the jurisdictional hook that Ms. Pablo is trying to advance is simply the legal question hook. And that's a hook that this court has already rejected at least twice. It appears that she's trying to carve out some room in the jurisdictional scheme by honing in on the word determination, but she's focusing on that word to the exclusion of the rest of the question about the hypothetical case where an asylum officer and an IJ made a, you know, some patently unconstitutional ruling, some racially suspect statement. I don't know what it would be. What about that? I think Judge Alito answered that question in Thuracidium, which is actually a question Judge Breyer asked there or Justice Breyer rather. In a footnote, Justice Alito says that in an extraordinary case like that, there will no doubt be some constitutional hook that a petitioner could advance that would give them review in some court. But the problem here is that Ms. Pablo just hasn't advanced one. Right. So in that case, you know, we watched that argument pretty closely in the Ninth Circuit. And I think they did leave open a door for a constitutional claim, perhaps, but I don't see that being raised here that we need to cross that bridge. I'm just checking to see if you read it the same way. That seems to me to be left for another day. I agree. And here we don't have a constitutional claim of that gravity. And we have the same legal claim that has already been rejected by this court in a similar case. Let me just check to see if my colleagues have any questions. I didn't mean to cut you off if you have more you want to say. I just want to check in with my colleagues because it's a little awkward to look in two directions and make sure I haven't missed them. From my perspective, there's simply nothing to under this existing precedent and Sting and Gomez-Cantillano, this petition, too, must be denied or excuse me, dismissed. Thank you for your argument. Counsel's very helpful. We're going to put another minute on the clock for opposing counsel because we asked several questions. Go right ahead, please. Briefly, Your Honors, my friend on the other side has said there is nothing to distinguish this court's precedents. Each of those, Pena and Sting, involved claims of fundamentally different because claims of procedural error require a showing of prejudice. And that inquiry into prejudice is going to enmesh the court in the IJ's factual findings because it has to decide how the case would have turned out differently if the procedures had been a little bit better. So these would be issues like whether the credibility determination would have been different if the petitioner had had a lawyer or had understood her interpreter. And as to this point in Therasina about whether an egregious constitutional violation would still be appealable, the government hasn't pointed to any language in 1252A that would allow for an appeal of such claim. It simply hasn't fitted that into the statutory text. Thank you, Your Honors. I appreciate the extra minute. Thank you both for your helpful arguments. Interesting and important case and we appreciate it very much. We'll go on to the next case on the calendar.
judges: BYBEE, BEA, CHRISTEN